IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:11 CR 070 |
| | ) | |
| Plaintiff, | ) | JUDGE DACID D. DOWD, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| MATTHEW HOLLAND, | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |

Now comes Defendant, Matthew Holland, by and through undersigned counsel, Jaime P. Serrat, and files this Sentencing Memorandum.  Mr. Holland respectfully requests this Honorable Court to consider a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553. Mr. Holland argues for a two (2) level reduction, variance, or a below-guidelines sentence for playing a minor role in the offense pursuant to USSG § 3B1.2(b). Mr. Holland also argues against the three (3) "threat of death" two (2) level enhancements pursuant to §2B3.1(b)(2)(F). With these reductions, the guideline range of imprisonment for an offense level of twenty-one (21) and a criminal history category of III is 46 to 57 months, Mr. Holland is respectfully requesting this Honorable Court to sentence him within that range. A more thorough explanation of this request is set forth in the attached Memorandum in Support.

Respectfully Submitted,

/s/ Jaime P. Serrat /s/_____
JAIME P. SERRAT, (#0031660)
Attorney for the Defendant
2000 Standard Building
1370 Ontario Street
Cleveland, OH 44113
(216) 696-2150
(216) 696-1718- fax
serratlaw@hotmail.com

1

## MEMORANDUM IN SUPPORT

### I.    BACKGROUND.

On February 16, 2011, a five (5) count Indictment was filed against Mr. Holland and another individual in the United States District Court, Northern District of Ohio, Eastern Division, for a violation of 18 U.S.C. §2113(a) and (2).  Mr. Holland has remained in custody since his arrest on January 24, 2011. On July 13, 2011, Mr. Holland pled guilty to Counts one (1), three (3), four (4), and five (5), of the indictment.  His case was then referred to the United States Pretrial Services and Probation Office for preparation of a Presentence Investigation and Report.

### II.   EVALUATION OF GUIDELINE RANGE.

The base offense level listed in the Presentence Investigation Report ("PSR") is twenty (20), for a violation of 18 U.S.C. §2113(a) and (2).  Paragraph thirty (30) of the PSR includes a two (2) level increase for a Specific Offence Characteristic which applies for having a demand note: "I have a gun, stay calm and nobody gets hurt" pursuant to §2B3.1(b)(2)(F).  Additionally there is a Specific Offense Characteristic two (2) point enhancement listed in paragraph thirty-seven (37) of the PSR pursuant to §2B3.1(b)(2)(F) for having a demand note: "This is a Robbery I have a Gun Stay Calm!! Don't Push any Buttons!! No Dye Packs!! I want the $5, $10s, $20s, $50s, $100s.  No One Will Get Hurt. Start Passing Me the money." The last two (2) enhancement made pursuant to §2B3.1(b)(2)(F) is in paragraph forty-four (44) of the PSR which states that there was a demand note: "I have a gun, stay calm and nobody gets hurt."  There is also a four (4) level increase in his offense level.  Mr. Holland has accepted responsibility, and therefore, pursuant to USSG § 3E1.1(a) and (b), the offense level is reduced by three (3) points. Therefore, the adjusted offence level with these enhancements and reduction for acceptance and

responsibility is (25). If the above enhancements do not apply, the offense level will be reduced to a twenty-three (23).  If a two (2) point reduction is given for a minor role in the offence, the offense level will be reduced to twenty-one (21).

According to the Criminal History Category computation in the PSR, Mr. Holland has criminal history category points of six (6), corresponding to a Criminal History Category III. Pursuant to USSG, Chapter 5, Part A, the guideline range of imprisonment for an offense level of twenty-one (21) and a criminal history category of III is 46 to 57 months.

## III.     MR. HOLLAND SHOULD RECEIVE A TWO LEVEL REDUCTION FOR HIS MINOR ROLE.

The defense argues that Mr. Holland is eligible for a two (2) level reduction pursuant to USSG § 3B1.2(b) for being a "minor participant." When an offense is committed by more than one participant, a role reduction under U.S.S.G § 3B1.2 may apply, and a defendant may receive a two-level decrease if his role was minor. U.S.S.G. § 3B1.2; *see also* U.S.S.G. § 3B1.2, comment. (n.2). In determining Mr. Holland's role in this offense, the Court is obligated to "measure [his] role against the relevant conduct attributed to [him] in calculating [his] base offense level."  *United States v. DeVaron*, 175 F. 3d 930, 943-944 (11th Cir. 1999).  To succeed in this claim, Mr. Holland has to establish that he "played a relatively minor role in the conduct for which [he has] already been held accountable."  *Id*, at 944.  The guideline definition of minor role also "clearly contemplates some assessment of relative culpability."  *Id.*

Based on the facts of the government's sentencing memorandum regarding Mr. Holland's codefendant and cousin, Richard M. Persa, "it would appear from the confessions of the two defendants that Richard Persa may have served in the leadership role…" (*Govt.'s Brief in Opposition to Defendants Request for Variance, 2).*  Additionally, "Specifically, given that Persa committed one of the bank robberies solo and was apprehended by police after committing a

second attempted solo robbery of the Subway down the street from where he lived, indicates that he probably had a leadership role with his cousin and co-defendant in planning and carrying out the robberies. Therefore, based on the Presentence Investigation Report and the Government's own sentencing memorandum, Mr. Persa's role in the offense exceeds Mr. Holland's participation this Mr. Holland respectfully requests this Court to reduce his offense level by two-levels for being a minor participant or, alternatively, to impose a below-guideline sentence as a departure or a variance.

**IV.    MR. HOLLAND SHOULD NOT RECEIVE A TWO LEVEL ENHANCEMENT FOR THREAT OF DEATH PURSUANT TO §2B3.1(b)(2)(F).**

In accordance with U.S.S.G. §2B3.1, Application Note 6. which states:

> "A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute a threat of death. The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death."

Mr. Holland did not possess a gun during any of the robberies described in Counts one (1), three (3), four (4), and five (5), of the indictment.  In fact, the §2B3.1(b)(2)(F) enhancement discussed in paragraph thirty (30) of the PSR for having a demand note: "I have a gun, stay calm and nobody gets hurt" was actually written and passed to the teller from Mr. Holland's codefendant, Richard Persa according to paragraph eleven (11) of the PSR.  Mr. Holland stated that he had never been to that U.S. Bank before and the robbery was not planned.  In fact,

Holland did not even enter the bank during the robbery. The surveillance photographs of the U.S. Bank during the robbery only show Mr. Holland's codefendant, Richard Persa, in the building. Mr. Holland was parked away from the bank, across the parking lot, and remained in the vehicle. He therefore had no knowledge of any gun, threatened gun, threat of violence, or threat of death conducted solely by Mr. Persa in the U.S. Bank building. Therefore, Mr. Holland respectfully requests that the two level enhancement described in paragraph thirty (30) of the PSR be removed.

Similar to this situation, the enhancement described in paragraph forty-four (44) of the PSR which states that there was a demand note: "I have a gun, stay calm and nobody gets hurt" was also written and used solely by Mr. Holland's codefendant.  According to paragraph fifteen (15) of the PSR, Holland went into the bank to scout for guards and then returned to the van. Upon his return, his codefendant Richard Persa entered the bank, approached the teller, and passed the demand not he had written.  Surveillance footage shows solely Richard Persa committing the robbery.

Mr. Holland understands that when a crime involves jointly undertaken criminal activity, the Sentencing Guidelines provide that each defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).  With regards to the first enhancement, the robbery was not planned and therefore, it was not reasonably foreseeable that Richard Persa would make a threat of death to the bank teller.  Additionally, the second death threat made by Mr. Persa in the absence of Mr. Holland happened after Mr. Holland drafted his own demand note, as described and argued below, that clearly does not express a threat of death.  Mr. Holland's minor role in driving the get away vehicle does not put him in a position to have knowledge that it was

reasonably foreseeable that death threats would be made. Thus, it was not reasonably foreseeable to Mr. Holland that Richard Persa would make a threat of death to the bank teller when conducting the robbery and the two point enhancement should not be applied as written in paragraphs thirty (30) and forty-four (44) of the PSR.

Additionally, Mr. Holland argues that the two level enhancement for the Specific Offence Characteristic described in paragraph thirty-seven (37) of the PSR pursuant to §2B3.1(b)(2)(F) for having a demand note, which stated "This is a Robbery I have a Gun Stay Calm!! Don't Push any Buttons!! No Dye Packs!! I want the $5, $10s, $20s, $50s, $100s.  No One Will Get Hurt. Start Passing Me the money."  This demand note written by Mr. Holland varies from the demand not written by his co-defendant Richard Persa.  In Persa's note, he wrote "stay calm and nobody gets hurt" where as Mr. Holland expressly stated that "No One Will Get Hurt."  The difference in these two statements shows that Mr. Holland's statement did not constitute a threat of death.  In fact, looking at the language of the note on its face, he was assuring that no one would get hurt, the opposite of threatening death or bodily harm on any individual.  Mr. Holland understands that the Sixth Circuit has co repeatedly held that notes containing the statement, "I have a gun, " qualify for the enhancement for threats. *United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002). With regards to this specific case law, under most circumstances, a bank robber's statement that he has a gun is sufficient to instill a fear of death in a reasonable victim and therefore warrants the threat-of-death enhancement.

The Ninth Circuit has held, after the decision made in *Winbush,* that in most, but not all, circumstances, statements such as "I have a gun" are sufficient to instill a fear of death in a reasonable victim and warrant the § 2B3.1(b)(2)(F) enhancement. *United States of America v. David Frank Jennings*, 439 F.3d 604 (9th Cir. 2006). The Ninth Circuit stated that there could be

circumstances that would sufficiently dilute the phrase "I have a gun" so that it would not qualify as a death threat. *Id.* The statement "No one will get hurt" deprives the words "I have a gun" of its ordinary and expected meaning as defined in *Winbush*.  The "No One will Get Hurt" statement was not a threat telling the teller to do something or else someone might get hurt.  The words literally read right off that page that "No one will get hurt" which dilutes the "I have a gun" statement to not qualify as a death threat as described in *Jennings*.

Therefore, based of the foregoing arguments, it was not reasonably foreseeable to Mr. Holland that his co-defendant Richard Persa would make death threats, most specifically in the first robbery where he had no prior knowledge that a robbery would commence, and Mr. Holland's own statement does not qualify as a threat of death because the phrase "I have a gun" was diluted by the assurance that no one would get hurt.

## V.      EVALUATION OF 18 U.S.C.A. §3553(a) FACTORS TO DETERMINE A REASONABLE SENTENCE.

### A.  LAW.

In fashioning an appropriate sentence, the District Court cannot presume that the Guideline range is reasonable but rather must also consider the factors enumerated in *18 USC 3553(a)* to determine if an adjustment is warranted. *United States v. Booker, 543 U.S. 220, 245-46, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). 18 U.S.C 3553(a)* requires the Court to impose a sentence that is sufficient, but not greater than necessary and lists factors to be considered in imposing a sentence. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed training, care or treatment; (3) the kinds of sentences available; (4) the kinds and range of

sentence under the guidelines; (5) pertinent policy statements by the Sentencing Commission; and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct", and (7) the need to provide restitution.

Since *Booker* and its progeny, the sentencing court may now consider even those mitigating factors that the advisory guidelines prohibit, e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. See: *United States v. Ranum, 353 F. Supp.2d 984 (E.D. Wisc. 2005)* ("the guidelines" prohibition of considering these factors cannot be squared with the *Section 3553(a)(1)* requirement that the court evaluate the "history and characteristics" of the Defendant... thus, in cases in which a Defendant's history and characteristics are positive, consideration of all of the *Section 3553(a)(1)* factors might call for a sentence outside the guideline range").

### B.  ARGUMENT

Mr. Matthew John Holland was born in Middleburg Heights, Ohio on December 5, 1980. His parents divorced when he was only a couple months old and he has never seen his father again.  Since that time, his mother had remarried twice and is currently divorced and single.  The only real father figure Mr. Holland ever had was his mother's second husband, Orville Wright. Mr. Wright was physically abusive to Mr. Holland, striking him on numerous occasions for no apparent reason.  When Mr. Holland was growing up, his stepfather would slice him with a butcher knife if he were to accidentally put his elbows on the table. Mr. Holland's mother and stepfather are both alcoholics.  His mother also has a history of drug addiction and does not support him in any way. Upon Mr. Holland's seventeenth (17th) birthday, he left his mother's home to escape the abuse and hasn't been in contact with her in five (5) years.  Mr. Holland's

mother confirmed that her ex-husband was very abusive to him, the other children, and her as well. Not only was he physically abusive, he was also mentally abuse to the family as a whole.

Mr. Holland has an eight (8) year old daughter Alexis Holland.  He has always been involved in Alexis' life, caring for her on the weekends and talking to her on the telephone during the week. He has tried to be a positive father figure to her and help in her upbringing since he was not afforded that during his childhood.  Unfortunately based upon the poor economy and his lack of funds, he is currently unable to financially support his daughter.  His mother, Alexis's Grandmother, also maintains contact with Alexis and sees her on a monthly basis.  The mother of his child, Jasmine Davenport had a ten-year relationship that she ended back in 2004.  This breakup coupled with his childhood abuse, lack of employment, and his ex keeping his daughter away from him, led him to have some depression issues, which have improved.  In fact, Mr. Holland requests that he be permitted mental health counseling, as he believes it would help him get past his childhood abuse and be an even better father to Alexis.

Mr. Holland is not only in need of treatment with regards to his drug abuse, he is desperately asking the Court to recommend intensive drug treatment for him.  He began drinking to the point of intoxication and abusing marijuana at the age of fifteen (15).  He began using heroin around the age of twenty-two (22) and was using approximately two (2) grams a day until the day of his arrest in this instant matter.  He has also experienced with LSD, ecstasy, and cocaine in his past.  Matthew Holland has accepted responsibility for all of his actions in this matter and even openly admitted to them when he was questioned by police officers.  He has stated that while being incarcerated, he realized that in how much his drug abuse has been holding him back from his future.  He doesn't want his daughter to think of him as a drug addict who spent her childhood incarcerated.     The most positive event that can come out of Mr.

Holland's incarceration would be to provide him with the treatment and therapy he needs to overcome his past and move beyond his drug addictions so he can be a father to his daughter and a productive member of society.

Mr. Holland has shown a strong employment history despite his drug abuse. He worked from the Summer of 2010 until his arrest in this instant offense cooking at Bar Uno on the Cleveland State University Campus. Prior to that, from January 2010 until October 2010, he was a cook at Pacers in Cleveland. Prior to that, from January 2009 until January 2010, he worked as a die cutter at Ameritemps in Cleveland. Prior to that he worked from 2001 to 2005 as a cook/kitchen manager at Champs in Valleyview, Ohio until he was detained and lost his jobs. Mr. Holland has also had experience working in construction refurbishing home and roofing. His desire to work shows his willingness to become a productive member of society.

Another factor this Court must consider is to provide adequate deterrence to criminal conduct. A sentence of 46 to 57 months would sufficiently punish Mr. Holland while also providing him with the proper time to receive the treatment he needs. Although Mr. Holland was a participant in this instant offense, he was persuaded by his cousin and drug addiction to participate. The robberies were not his idea. The longest sentence Mr. Holland has served was twenty-two (22) months back when he was nineteen (19) years old. This was also the longest period of time Mr. Holland has ever remained sober. Unfortunately, during this time he spent in prison, he was not provided the treatment he needed and has actually never been entered into any drug rehabilitation programs despite his request to the Court to place him in one. Therefore, if the Court were to sentence him to 46 to 57 months, it would be more than twice as long as any prior time Mr. Holland has spent incarcerated. He is a nonviolent offender and his entire criminal history is scattered with crimes that were committed to feed his addiction. Once Mr.

Holland finally received treatment, he believes he can obtain a job and become a clean individual who is a law abiding member of society.

Overall, Mr. Holland believes that he has learned tremendously from this terrible experience. When considering the factors of 18 U.S.C.A. §3553(a), Mr. Holland respectfully requests this Court to consider his remorse, his troubled and abusive childhood, his ongoing battle against drug abuse, and his strong employment history.

## VI.    CONCLUSION

Based upon the arguments above, Mr. Holland respectfully requests that he be given a two (2) level reduction or downward variance based on his minor role in the offence. Additionally, Mr. Holland respectfully requests that the three (3) two (2) level enhancements for "threat of death" not be applied.  Finally, Mr. Holland respectfully requests that the Court consider all of the 18 U.S.C. § 3553(a) factors described above and impose a sentence that is sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully Submitted,

/s/ Jaime P. Serrat /s/_____
JAIME P. SERRAT, (#0031660)
Attorney for the Defendant
2000 Standard Building
1370 Ontario Street
Cleveland, OH 44113
(216) 696-2150
(216) 696-1718- fax
serratlaw@hotmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2011, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jaime P. Serrat /s/
JAIME P. SERRAT, (#0031660)