1
2

**UNITED STATES OF AMERICA**
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

3

– – – – –

4

5      UNITED STATES OF AMERICA,          )
                                         )
6                  Plaintiff,            )    Case No.
                                         )
7                  vs.                   )    1:11CR00070-2
                                         )
8      MATTHEW J. HOLLAND,               )
                                         )
9                  Defendant.            )

10

11                       – – – – –

12

13      **TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE HONORABLE**

14       JUDGE DAVID D. DOWD, JR., JUDGE OF SAID COURT,

15          ON TUESDAY, NOVEMBER 8TH, 2011,

16          COMMENCING AT 1:30 O'CLOCK P.M.

17                       – – – – –

18

19

20

21      Court Reporter:              GEORGE J. STAIDUHAR
                                     801 W. SUPERIOR AVE.,
22                                   SUITE 7-184
                                     CLEVELAND, OHIO 44113
23                                   (216) 357-7128

24                       – – – – –

25

2

1   APPEARANCES:

2        On behalf of the Government:

3            OFFICE OF THE U.S. ATTORNEY
             BY:  PHILLIP J. TRIPI, AUSA
4            801 W. Superior Avenue, Suite 400
             Cleveland, OH 44113
5

6        On behalf of the Defendant:

7            JAIME P. SERRAT, ESQ.
             2000 Standard Building
8            1370 Ontario Street
             Cleveland, OH 44113
9

10                        - - - - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                 P R O C E E D I N G S

2         THE COURT:  The Court calls the case of

3  United States versus Matthew J. Holland.  I would ask if

4  Mr. Holland received — do you want to come to the podium

5  please, Mr. Holland?

6         Mr. Holland, did you have an opportunity to

7  review the presentence report?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  Are there any additions or

10  corrections the Defendant wishes to have made,

11  Mr. Serrat?

12         MR. SERRAT:  No, your Honor, other than the

13  objections that are noted.

14         THE COURT:  I believe — is this a case

15  where there was an additional plea?

16         MR. SERRAT:  Yes.

17         THE COURT:  And motion to suppress?

18         MR. SERRAT:  And we already executed the

19  proper document to preserve that for the Sixth Circuit,

20  your Honor.

21         THE COURT:  All right.  Well, looking now,

22  the offense level is calculated on page 8, and the

23  adjusted offense level is 24, and I believe you were

24  complaining — I shouldn't say complaining — taking

25  issue with the specific offense characteristic regarding

4

1    the gun?

2              MR. SERRAT:  Correct.

3              THE COURT:  And paragraph 30 reads "pursuant

4    to 2B3.1 — pursuant to Section 2B3.1(b)(2)(F), demand

5    note.  I have a gun.  Stay calm, and nobody gets hurt."

6    If a threat of death is made, increase by two levels, and

7    that was for the bank robbery in Count 1.

8              In Count 2 there was — with the adjusted

9    offense level being calculated to 24.

10             Count 3, that bank robbery also results in a

11   base offense level — adjusted offense level of 24 with

12   the two levels added because the demand note said, quote,

13   "this is a robbery.  I have a gun.  Stay calm.  Don't

14   push any buttons.  No dye packs.  I want $5s, $10s, $20s

15   $50s, hundreds.  No one will get hurt.  Start passing me

16   the money."

17             And Count 5, the bank robbery there the base

18   offense level was 20, and apparently, there was no

19   threat there.  So the adjusted offense level is 22.

20   Then the multiple count adjustment added four level less

21   3 for acceptance of responsibility, and I gather the

22   Government has no objection to the third level for

23   acceptance?

24             MR. TRIPI:  Your Honor, we do not, and we so

25   move.

1              THE COURT:  Thank you.

2              So the adjusted offense level turns out to

3    be 25, and the Criminal History Category, I think it is a

4    III.

5              MR. SERRAT:  It is, your Honor.

6              THE COURT:  Now, your objection was to the

7    addition of the three levels for threat?

8              MR. SERRAT:  Correct, your Honor.

9              THE COURT:  And you want to elaborate on

10   that?

11             MR. SERRAT:  Judge, I prepared a sentencing

12   memorandum —

13             THE COURT:  And I appreciate that.

14             MR. SERRAT:  — in detail.  And I will

15   summarize it quick.

16             On two of the more serious threats, so to

17   speak, he was way outside.  He was nowhere near the bank,

18   though the note as well, the comments were made by the

19   co-defendant.

20             So, therefore, I understand the aiding and

21   abetting principle, but I would argue, my client, there

22   is no evidence that my client knew or would have known

23   that that was going to be presented to the teller.

24             As to the third one, your Honor, I

25   understand since then, even though not Sixth Circuit,

1      there is a case out of the Ninth Circuit that leaves it

2      up to the Court to make a final determination whether or

3      not that would apply, and I understand that, again, it is

4      a different circuit with good law on behalf of my client,

5      and it is simply to preserve for the Sixth Circuit I am

6      making that motion, your Honor.

7                    THE COURT:  Very well.  Does the Government

8      have a response?

9                    MR. TRIPI:  Your Honor, the evidence

10     demonstrated that both Persa and Holland were co-equal

11     participants in the crimes and took turns as far as who

12     was going to go into the bank itself.

13                   We believe it would be foreseeable they

14     would be using this type of note, especially giving the

15     type of note he was using himself.  We would acknowledge

16     the more egregious note was written by Persa.

17                   THE COURT:  And what was Mr. Persa's

18     sentence?

19                   MR. SERRAT:  It was higher.  He ended up at

20     the — I think it was a Criminal History IV.

21                   MR. TRIPI:  He ended up, your Honor, ended

22     up with 96 months.

23                   MR. SERRAT:  25, Criminal History IV.

24                   THE COURT:  And his range was what?

25                   MR. SERRAT:  It was 84 to 105.  I am going

1   by memory.

2                   THE COURT:  I think that's true.  Yeah, he

3   was — did I calculate him as a 23?

4                   MR. SERRAT:  No, Judge, a 25, 25, Criminal

5   History IV, Category IV.

6                   THE COURT:  Oh, IV.  Now I see it.  I was

7   trying to find where I was.

8                   So he got 96 months and basically because

9   his Criminal History was slightly higher than your

10  client's?

11                  MR. SERRAT:  And other things I mentioned in

12  my argument.

13                  THE COURT:  He had a more aggressive role.

14                  MR. TRIPI:  Persa had two other things that

15  may — just in fairness to this Defendant, first, he had

16  an additional count where he committed a solo bank

17  robbery that this Defendant is not facing.

18                  THE COURT:  Is that the Subway.

19                  MR. SERRAT:  No, no.  Different one.

20                  MR. TRIPI:  Then the Subway, it appears

21  Persa is the one that went off and did that, and the

22  Defendant's only involvement in the Subway matter was to

23  attempt to shield him from detection from the Cleveland

24  Police.

25                  THE COURT:  Because that was the search that

8

1    eventually resulted in the identification of one of the

2    persons as the bank robber as I recall.

3                MR. TRIPI:  Yes, your Honor.

4                THE COURT:  All right.  Well, as I see it,

5    the sentencing range is 70 to 87 months.

6                Does the Government have a sentencing

7    recommendation?  I am denying the motion —

8                MR. SERRAT:  I got you, Judge.

9                THE COURT:  — for the adjustment of the

10   offense level, but I still have 17 months here to

11   consider.

12               MR. SERRAT:  There is one other — to make

13   it clear on the record —

14               THE COURT:  Sure.

15               MR. SERRAT:  — we requested a minor role

16   two-level reduction for minor role.  Some of the things I

17   have — have been spread on the record, but certainly,

18   the evidence would indicate that Persa, the co-defendant,

19   took the leader role.

20               He was involved in a bank robbery by

21   himself.  The Subway matter would also indicate that he

22   was much more culpable or perhaps took the leadership

23   role than my client, and because of that, your Honor, we

24   are asking for a two-level reduction for role.

25               THE COURT:  All right.  I am going to deny

1    that.  I don't believe it is called for.  So I still

2    think I am at 70 to 87 months.

3                    MR. TRIPI:  Your Honor, we were going to

4    defer to the Court's discretion as to where within the

5    range.  We would ask for a sentence within the range and

6    for restitution, joint and several restitution be ordered

7    as well.

8                    MR. SERRAT:  I have a second, your Honor.

9                    THE COURT:  Is there a restitution

10   recommendation here in the presentence report?  I guess I

11   did make restitution with Persa.

12                   MR. RIFFLE:  Top of page 37, your Honor.

13                   THE COURT:  37.  Thank you.  Okay.  Very

14   well.  Thank you.

15                   MR. SERRAT:  Judge — I'm sorry.

16                   THE COURT:  Go ahead.

17                   MR. SERRAT:  I am going to make a short

18   statement, and after that, it will be followed by my

19   client.

20                   Mr. Tripi and I have had numerous

21   discussions regarding this matter, and I asked the

22   Government by way of Mr. Tripi whether they would have a

23   formal objection, whether the Court would impose the

24   minimum sentence, and he indicated he would not.

25                   And I want to make sure the Court is aware

1   of that.  With that, Judge, with the Court's permission,

2   I would turn over to you my client.  I don't want him to

3   repeat the statement that I would make.  Go ahead.

4            THE COURT:  Mr. Holland, you have the

5   opportunity to speak.  And you may do so.

6            THE DEFENDANT:  Your Honor, I am not going

7   to stand here and give you excuses for what I did or try

8   and put the blame on something or someone else.  When it

9   comes down to it, the truth is I am the one to blame, and

10  I do accept full and complete responsibility for my

11  actions.

12            It was my fault and no one else's, and I

13  just want to say that I am disgusted with myself.  To

14  this day, I still can't believe I was doing what I did.

15  It was wrong.  What I did was wrong, and I apologize.

16            Your Honor, I just want you to know that I

17  am not a bad person.  Bottom line is that, you know, I am

18  a drug addict, and I need help.  I know I need help.  And

19  I have had this addiction for many years and pretty much

20  has done nothing but ruin my life.

21            I have lost everything good that I ever had

22  because of it, and, you know, it took me getting to where

23  I am at right now to finally realize that if I don't

24  change the way I live, one of two things are going to

25  happen:

1            Either, one, I am going to spend the rest

2     of my life in and out of jail, or two, I am going to

3     end up dead; simple as that.  And I don't want to live

4     my life knowing that that's what I have to look forward

5     to.

6            THE COURT:  Well, I appreciate your remarks.

7     I note that you will be 31 in December, correct?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  And you have got a daughter?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  You got a GED and some college.

12     Where did you go to the school and what college?

13            THE DEFENDANT:  Just community college, your

14     Honor.

15            THE COURT:  What employment skills do you

16     now have?

17            THE DEFENDANT:  I have always been a cook.

18     I was a cook for about 10, 11 years.  I have done other

19     things.  I have rehabbed homes.  I have done roofing.

20            THE COURT:  Well, we have a lot of problems

21     with bank robbery, and I realize that's where the money

22     is, and that's what produces bank robberies.  Actually,

23     your sentence is going to be about as low as any sentence

24     I recall giving for a bank robbery.

25            It is a pretty serious offense, but the

12

1    thought I want to leave you with is, your life expectancy

2    as of today is probably about 50 years.  So you are going

3    to come out of prison, and the issue is going to be what

4    are you going to do with the rest of your life?

5              And that's basically under your control, and

6    I do hope that while you are in prison you will accept

7    every opportunity you get to get more education and, if

8    possible, enlist or try to get into prison industries.

9              In the federal the system, they have what

10   they call prison industries, and most prisons have prison

11   industries.  And you can possibly develop a trade to give

12   you an opportunity for more gainful employment when you

13   are released.  I have visited a number of prisons, and I

14   have seen some pretty impressive programs in prison

15   industries.

16             So the moment you get to prison, see what

17   you can do toward developing a trade.  You say you are a

18   cook, and they may want you to be a cook, you know, but

19   you may want to see if there is something else that you

20   can develop.

21             I appreciate the remarks that you have made,

22   and as a consequence, it will be the Court's sentence

23   that you be confined to the BOP for a period of 72 months

24   with supervised release for a period of three years, plus

25   an order of restitution consistent with the — what's set

1  forth in the presentence report with respect to

2  restitution.  That will be jointly and severally with the

3  co-Defendant as far as payments of the restitution.

4          MR. SERRAT:  Judge, while you are issuing

5  the order — and I don't mean to stop you — could the

6  Court recommend — and I understand it is a

7  recommendation — he thinks Cumberland would best fit for

8  him in Maryland.

9          THE COURT:  We will recommend it.

10         MR. SERRAT:  And could you recommend a

11  500-hour —

12         THE COURT:  I will do that, and I have more

13  things I will have to put into this order.

14         Upon release from imprisonment, the

15  Defendant shall be placed on supervised release for a

16  term of three years, and each count could be served

17  concurrent with each other.

18         Within 72 hours of release from the custody

19  of the Bureau of Prisons the Defendant shall report in

20  person to the United States Probation Office in the

21  sentencing district — in the district to which he has

22  been released.

23         The Court waives a fine.

24         The Court will require restitution in the

25  amount of $6,830 to KeyBank and $3,703 to US Bank.

1    Restitution is due and payable immediately.  I assume I

2    ordered restitution for the other — the co-Defendant.  I

3    don't remember that.

4             MR. RIFFLE:  I was not in on that case, your

5    Honor, but there is a — I apologize — but there is a

6    third bank that is listed on top of page 36, which is

7    Fifth Third, and the reason, they never responded, but

8    the fact is they are out $5,145 that I would recommend be

9    added to those other two losses.

10            THE COURT:  Very well.  I will include that.

11    But the payment shall be joint and several with the

12    co-Defendant, and I assume I have an order of restitution

13    in that sentencing entry, but frankly, I don't remember.

14            MR. TRIPI:  Your Honor, yes, I believe I

15    do — I recall there being a restitution order.

16            THE COURT:  When I say joint and several,

17    what that means is, any payment that he makes, you get

18    credit, and any payment you make, he gets credit until

19    the full amount has been paid.  That's what joint and

20    several means.

21            The Defendant shall pay 25 percent of his

22    gross income per month through the Federal Bureau of

23    Prisons Inmate Financial Responsibility Program.

24            If a restitution balance remains upon

25    release from imprisonment, payment is to commence no

1  later than 60 days following release from imprisonment to

2  a term of supervised release in equal monthly payments

3  or, at least, a minimum of ten percent of Defendant's

4  gross monthly income during the term of supervised

5  release and thereafter as prescribed by law.

6  Notwithstanding the establishment of payment

7  schedule, nothing shall prohibit the United States from

8  executing or levying upon property of the Defendant

9  discovered before or after the date of his judgment.  The

10  Court waives the interest requirement in this case.

11  The Defendant shall pay the United States a

12  special assessment of $400 — are there four counts?

13  MR. TRIPI:  Yes, your Honor.

14  MR. SERRAT:  Yes, Judge.

15  THE COURT:  Okay.  That shall be due

16  immediately.

17  While on supervision, Defendant shall not

18  commit a federal, state, or local crime; shall comply

19  with the standard conditions that have been adopted by

20  this Court, and shall comply with the following

21  additional conditions:

22  Mandatory drug testing.  The Defendant shall

23  refrain from any unlawful use of a controlled substance

24  and submit to one drug test within 15 days of the

25  commencement of supervision and to at least two periodic

1    drug tests thereafter as determined by the Pretrial

2    Services Probation Officer.

3              Firearms and dangerous weapons:  The

4    Defendant shall not posses a firearm, destructive device,

5    or dangerous weapon.  And I want to make sure you

6    understand, even after you are off supervised release,

7    you can never possess a firearm.

8              Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Because so many people come

11   before me as convicted felons who have a firearm under

12   their control, and they are in big time trouble, and

13   that's even if somebody is threatening you.  You just

14   can't have a gun on your person, in your automobile, or

15   on your premises, and please remember that, so you don't

16   fall prey to that particular situation.

17             Search and seizure:  The Defendant shall

18   submit his person, residence, place of business,

19   computer, or vehicle to a warrantless search conducted

20   and controlled by the United States probation officer at

21   a reasonable time and in a reasonable manner based upon

22   reasonable suspicion of a contraband or evidence of a

23   violation of a condition of release.  Failure to submit

24   to a search may be grounds for revocation.

25             The Defendant shall inform any other

1   residents the premises may be subject to a search

2   pursuant to this condition.

3                   Financial disclosure:  The Defendant shall

4   provide the probation officer with access to any

5   requested financial information.

6                   Financial restriction:  Defendant shall not

7   incur new credit charges or open additional lines of

8   credit without the approval of the probation officer.

9                   Drug treatment:  The Defendant shall

10  participate in an approved program of an outpatient,

11  inpatient, or detoxification of substance abuse

12  treatment, which will include drug and alcohol testing

13  to determine if the Defendant reverted to substance

14  abuse.

15                  Mental health treatment:  The Defendant

16  shall participate in an outpatient mental health

17  treatment program as directed by the probation

18  officer.

19                  DNA collection:  The Defendant shall

20  cooperate in the collection of DNA as directed by the

21  probation officer.

22                  Financial windfall condition:  Defendant

23  shall apply all monies received from income tax refunds,

24  lottery winnings, judgments or any other anticipated or

25  unexpected financial gain to the outstanding

1    Court-ordered financial obligation.

2                    The Defendant shall be given credit for the

3    time he has been in custody.

4                    When did the Defendant go into custody?

5                    MR. SERRAT:  1-14, Judge, January 14th.

6                    THE COURT:  Very well.  The Court will

7    indicate he should be granted credit for that time he has

8    been in custody.

9                    Now, I ask the Government, is there anything

10   further you believe I need to cover with respect to the

11   sentencing?

12                   MR. TRIPI:  Your Honor, no.  I do note that

13   the release status indicates he was arrested on January

14   24th.  I don't know whether — there may have been a

15   period he was in state custody.  I don't know if the

16   Bureau of Prisons will give that to him, but on the face

17   of the presentence report, it says January 24th was the

18   initial appearance.

19                   MR. RIFFLE:  He went into federal custody on

20   January 24th, but he was previously in local custody

21   before that.

22                   THE COURT:  Oh, I see that.  So we will make

23   it from the 24th of January.  It is still a lot of time

24   you are credited for.

25                   You want a recommendation for the 500-hour

1    drug treatment program?

2                    MR. SERRAT:  We do, your Honor.

3                    THE COURT:  I will make that, and then

4    he wants to request the institution in Cumberland,

5    Maryland?

6                    MR. SERRAT:  Correct.

7                    THE COURT:  I will make that recommendation,

8    but I have to tell you, Mr. Holland, that the Bureau of

9    Prison has every right to ignore me, and they frequently

10   do, but we will make the recommendation.

11                   Do you have an alternative recommendation?

12                   THE DEFENDANT:  Terra Haute, your Honor.

13                   THE COURT:  Terra Haute, all right.  We will

14   give that as a secondary request.

15                   THE DEFENDANT:  Thank you.

16                   THE COURT:  Anything further that the

17   Defendant wants to bring to my attention?

18                   MR. SERRAT:  Just the appeal, Judge.

19                   THE COURT:  Right.  Obviously, he has a

20   right to file a notice of appeal, and I assume you are

21   going to file a notice for him?

22                   MR. SERRAT:  I will, your Honor.

23                   THE COURT:  Do you want me to appoint you or

24   someone else?

25                   MR. SERRAT:  However.  Mr. Holland indicated

1   he would like me to do it, but you ask him now on the

2   record.

3                   THE DEFENDANT:  Yeah.  I would like

4   Mr. Serrat to do it.

5                   THE COURT:  I will appoint him if he will

6   accept the assignment.

7                   MR. SERRAT:  Yeah.

8                   THE COURT:  It was a pretty contested issue,

9   and I think it is a conditional plea as I recall it.

10                  MR. SERRAT:  It is.

11                  THE COURT:  I have to tell you, Mr. Holland,

12  the Sixth Circuit is not speedy.  So you anticipate

13  probably at least a year will go by before you will hear

14  on your appeal.  Even though I know Mr. Serrat will work

15  expeditiously to represent you, and I have great respect

16  for his abilities, and I know he will do a good job in

17  representing you, but you have to recognize it is going

18  to take a while before they rule.

19                  THE DEFENDANT:  I understand, your Honor.

20                  THE COURT:  Anything further to come before

21  the Court?

22                  MR. TRIPI:  No, sir.  Thank you.

23                  THE COURT:  Court will be in recess.

24                  (Hearing concluded at 1:45 p.m.)

25                        - - - - -

1                       C E R T I F I C A T E

2              I, George J. Staiduhar, Official Court

3      Reporter in and for the United States District Court,

4      for the Northern District of Ohio, Eastern Division,

5      do hereby certify that the foregoing is a true

6      and correct transcript of the proceedings herein.

7

8

9

10                      s/George J. Staiduhar
                        George J. Staiduhar,
11                      Official Court Reporter

12                      U.S. District Court
                        801 W. Superior Ave., Suite 7-184
13                      Cleveland, Ohio 44113
                        (216) 357-7128

14

15

16

17

18

19

20

21

22

23

24

25