```
1                  UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                        EASTERN DIVISION

3    UNITED STATES OF AMERICA,       Case No. 1:11cr070
                                     Akron, Ohio
4              Plaintiff,            July 13, 2011

5         vs.

6    MATTHEW HOLLAND,

7               Defendant.

8
                     TRANSCRIPT OF PROCEEDINGS
9           BEFORE THE HONORABLE DAVID D. DOWD
                 UNITED STATES DISTRICT JUDGE
10

11                  CHANGE OF PLEA HEARING

12

     APPEARANCES:
13

14   For the Government:       Phillip J. Tripi
                               Assistant United States Attorney
15                             Northern District of Ohio
                               801 Superior Avenue, West
16                             Suite 400
                               Cleveland, Ohio  44113
17                             (216) 622-3769

18

     For the Defendant:        Jaime P. Serrat, Esq.
19                             2000 Standard Building
                               1370 Ontario Street
20                             Cleveland, Ohio  44113
                               (216) 696-2150
21

22

23

24

25
```

1

2

3     Court Reporter:              Lori Ann Callahan, RMR-CRR
                                   United States District Courthouse
4                                  Room 568
                                   2 South Main Street
5                                  Akron, Ohio  44308
                                   (330) 819-8676
6

7

8

9     Proceedings recorded by mechanical stenography, transcript
      produced by computer-aided transcription.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                          P R O C E E D I N G S

                                -   -   -

                THE COURT:  The court calls the case of United

States versus Matthew J. Holland, Case Number 1:11cr70.

This case is scheduled for trial, I believe, for July 25.

                The court published an opinion yesterday

denying the defendant's motion for, in effect, a second

suppression hearing, and from my standpoint, the case is

ready for trial, unless there's going to be some separate

disposition.  Mr. Serrat?

                MR. SERRAT:  Thank you, Your Honor.

                I've had discussions with my client as a

result of the court's ruling.  My client has yet to see me.

I thought I was going to have an opportunity to talk to him

and I didn't.  I went to CCA this morning at 8:30.  I guess

he was already here and I missed him.

                Lo and -- then I was going to have time, but I

had a sentencing.

                THE COURT:  I am perfectly okay to delay this

for half an hour, if you want to go up to the marshal's

office and review it with him.

                MR. SERRAT:  Before that, Judge, in

anticipating that, I've had some communications with the

U.S. Attorney's Office yesterday, I think afternoon, tried

1    to figure out exactly where it is that they think my client

2    is going to be, and I didn't know whether I was going to

3    have sufficient time to discuss that with him.  I'm worried

4    about the third level for acceptance of responsibility if he

15:17:57  5    changes his mind.  And I was trying to figure out if he

6    would give me a day or two to make that final decision.

7              I don't know whether a half hour would do it

8    or not.  And I think -- Monday was thrown out -- up in the

9    air by --

15:18:12  10              THE COURT:  I am sorry, what was thrown out?

11              MR. SERRAT:  Up until Monday to make the

12    decision or schedule a change of plea on that day.  And

13    that's what we were discussing before the court came in.

14              And I don't know if Mr. Tripi has made up his

15:18:27  15    mind or not.  I also asked him the same question yesterday

16    and we had that same discussion yesterday as well.  I now

17    think I have a pretty good idea where the government thinks

18    my client is going to be as far as the level computation.

19    That will be later on for sentencing, certainly not at the

15:18:43  20    time of plea.

21              Again, I really would like some time to talk

22    this over with my client.  I thought I was going to have all

23    morning and I didn't.

24              THE COURT:  I realize that.  Can I see the

15:18:52  25    scheduling book, please?  There comes a point where counsel

1   needs to know whether they're going to go to trial or if

2   there's some other disposition.  I am fairly reluctant to

3   keep continuing this.  I was hopeful possibly that I

4   certainly have more time here yet today for you all to

15:19:47 5   discuss this.  It's only 3:20.  I guess I am interested in

6   what the government's position is.

7           MR. TRIPI:  Judge, I just wanted to let the

8   court know that I've provided Mr. Serrat with the

9   calculations, which I can again provide him with the

15:20:10 10   guidelines that his client would be exposed to if he chooses

11   to plead, and we've also written up a small addendum,

12   written addendum in the event he wants to enter a

13   conditional plea.

14           So the status of the discussions are that we

15:20:25 15   are willing, if we have a timely plea, to consider still

16   granting him the third level and give him a conditional

17   change of plea.

18           The offer that's on the table right now is,

19   simplistically, that the defendant would have an ability to

15:20:42 20   plead straight up to the four counts of the indictment, and

21   that we would -- if he was pleading today, I talked to my

22   cocounsel, Mr. Serrano, and we both decided that the third

23   level would be appropriate if the plea was timely and was

24   coming today.

15:21:02 25           Mr. Serrat had advised me he was hoping to

1    talk to him today, and we do have some time if the court

2    wants to grant us a slight recess.

3              Our major problem is, you know, because it's a

4    victim case and there's individuals that will have to be

15:21:16  5    contacted, we would prefer not to have to wait and/or also

6    bring up all the emotions connected with this with the

7    victims.  There's some trial prep that if we find out

8    midweek next week, there's no way we can get it ready for

9    the 25th.  If the trial date was continued and we changed

15:21:36 10    the 25th --

11              THE COURT:  Let me assure you, one thing I'm

12    not going to do is continue the trial.

13              MR. TRIPI:  Again, we would rather wait today

14    and give Mr. Serrat an opportunity to talk to him right now,

15:21:51 15    and to see if we can resolve the matter today, than to

16    postpone it to another day.

17              If we can't, though, Your Honor, if the court

18    is of the mind to give him a day or two, I would prefer not

19    to have it -- I would prefer to have it set as an actual

15:22:09 20    date for a potential change of plea, so that it's not a

21    matter of him communicating and us waiting for the 25th,

22    because we have things we would have to do to get ready for

23    the trial.

24              We've already filed jury instructions and voir

15:22:22 25    dire, but the final witness prep would have to take place,

1  and final marking of exhibits.

2  THE COURT:  Does the institution come to pick

3  up the defendant?

4  DEPUTY MARSHAL:  Yes.  They're here.  They're

15:22:40  5  standing by.  They've been here for the day.

6  THE COURT:  They're anxious to get going,

7  obviously?

8  DEPUTY MARSHAL:  They are.

9  THE COURT:  I can understand that.

15:22:48  10  Let's do this:  I will delay it until 4:00.

11  Please take the defendant back to the marshal's office and

12  let Mr. Serrat speak with him.

13  And I want to address the defendant.  The

14  question of whether you decide to plead guilty or go to

15:23:11  15  trial is absolutely your choice.  And certainly, you can

16  listen to what Mr. Serrat has to say by way of his advice,

17  but in the final analysis, it's your decision, and were I to

18  take your -- if you decide to plead guilty, I'll spend a

19  considerable amount of time in the process taking your

15:23:33  20  guilty plea, explaining your various rights, making certain

21  that there's a factual basis for the plea, explain to you

22  the sentencing consequences if you plead guilty.  And that

23  process takes me about half an hour to go through it.

24  So let's do this:  You meet with Mr. Serrat,

15:23:51  25  and if I am told at 4:00 that you're not prepared to enter a

1    plea of guilty today, I'm going to schedule the case for

2    trial.  I'm not going to schedule another meeting for you to

3    enter a guilty plea.  You've got 35 minutes to make up your

4    mind.

15:24:05  5          Court will be in recess until 4:00.

6          (Thereupon, a recess was had.)

7               THE COURT:  Let the record show that we are in

8    court in the case of United States versus Matthew Holland,

9    Case Number 1:11cr70.

15:58:37  10              I have been informed that it is the defendant,

11   Matthew Holland's present intention to enter a plea of

12   guilty to the counts charging him with bank robbery in the

13   indictment returned in Case Number 1:11cr70.

14               Mr. Holland, is that correct, that your

15:58:57  15   present intention is to enter a plea of guilty?

16               THE DEFENDANT:  Yes, Your Honor.

17               THE COURT:  Now, before I can accept your

18   plea, there are a number of matters I need to review with

19   you, and it will take me probably close to half an hour

15:59:09  20   before I am finished.  And I want you to understand the fact

21   that you've told me that you now intend to plead guilty does

22   not require you now to plead guilty if you change your mind

23   during our discussion.

24               Do you understand?

15:59:24  25               THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Also, if at any time you have any

2  questions about the instructions I'm giving you,

3  explanations that I'm giving you, I want you to feel free to

4  say to me, "Judge, I don't understand."

15:59:36  5    Will you do that?

6    THE DEFENDANT:  Yes, sir.

7    THE COURT:  Now, I want to examine you under

8  oath with the understanding that if you tell me something

9  under oath that you know is false, you're subject to being

15:59:47  10  prosecuted for perjury or making a false statement.

11    Do you understand that?

12    THE DEFENDANT:  Yes, sir.

13    THE COURT:  And I would ask you to please take

14  the oath.

15:59:53  15    CLERK:  Please raise your right hand.

16    (Defendant sworn.)

17    THE COURT:  Would you please state your full

18  name?

19    THE DEFENDANT:  Matthew John Holland.

16:00:05  20    THE COURT:  And, Mr. Holland, before you were

21  incarcerated, where did you live?

22    THE DEFENDANT:  Cleveland, Ohio.

23    THE COURT:  The address?

24    THE DEFENDANT:  2252 West 25th.

16:00:18  25    THE COURT:  And how old are you?

1          THE DEFENDANT:  Thirty years old.

2          THE COURT:  How far did you go in school?

3          THE DEFENDANT:  College.

4          THE COURT:  Do you have some college?

16:00:27   5          THE DEFENDANT:  Yes.

6          THE COURT:  I assume then that you understand

7    -- I assume English is your native language?

8          THE DEFENDANT:  Yes.

9          THE COURT:  If at any time I use words today

16:00:40  10   that you don't understand, would you please so indicate to

11   me?

12          THE DEFENDANT:  Yes, sir, Your Honor.

13          THE COURT:  As you are here today, are you

14   under the influence of any drugs of abuse or intoxicating

16:00:52  15   beverages?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  In your mind, do you suffer from

18   any mental disabilities of any sort?

19          THE DEFENDANT:  No, sir.

16:00:58  20          THE COURT:  I want to begin by explaining the

21   constitutional rights to which you are entitled in this

22   case.  My guess is you may know some of them, but I'm

23   required to instruct you on those constitutional rights.

24          The first constitutional right to which you

16:01:19  25   are entitled in this case is to be represented by counsel.

1           Now, Mr. Serrat, your counsel, has the

2    obligation to represent you throughout these proceedings.

3    If you plead guilty or are found guilty, he has a continuing

4    obligation to represent you throughout the sentencing

16:01:35   5    proceedings.

6           Do you understand?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  All right.  Now, the next

9    constitutional right that you in effect give up if you plead

16:01:42  10    guilty is your constitutional right to trial by jury.

11           Do you understand you have such a

12    constitutional right?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Do you understand were you to

16:01:52  15    stand trial, we will impanel a jury.  They would sit over

16    there in the jury box and they would be instructed about the

17    elements of the crime with which you're charged.  They would

18    be further instructed that the government had to prove each

19    of the elements of the crime by proof beyond a reasonable

16:02:11  20    doubt, and if they failed to do that, they should find you

21    not guilty.

22           Do you understand?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Now, I would like to take you

16:02:18  25    through the elements of the first count of bank robbery,

1    because I think the elements are similar in all the counts.

2    So do we have a copy of the indictment that we can place in

3    front of Mr. Holland, please?

4              If you don't have a copy, we can get you one.

16:02:50 5    I am sure it's hard to find it.

6                   MR. SERRAT:  I have one.

7                   THE COURT:  But I want Mr. Holland to have one

8    in front of him when I review it with him.

9              Phil, do you have a copy?

16:03:14 10                   MR. TRIPI:  One second, Your Honor.

11              I am sorry, I do not seem to have an extra

12    copy.

13                   THE COURT:  Can you print one here?

14                   CLERK:  Yes.  I just have to get in the case

16:03:38 15    here.

16                   THE COURT:  All right, Mr. Holland.  I want to

17    review with you the elements of the crime charged in Count

18    1, and I think Count 1, Counts 3, 4 and 5 are similar.  The

19    dates changed, but otherwise, I believe the elements are the

16:04:37 20    same.

21              So let's look at Count 1.  And the first

22    element of the crime is what I call time and place.  You

23    will see it charges that the offense occurred on or about

24    November 13, 2010, in the Northern District of Ohio, Eastern

16:04:51 25    Division.  That's the so-called time and place.

1          So the government has to prove that the

2     offense that's further alleged took place on or about that

3     time in that geographical area.

4          Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  That's Count -- that's element

7     number 1.

8          The defendants herein, after they've named

9     you, did, by force and violence and by intimidation, take

10    and cause to be taken from the person and presence of

11    tellers and other employees at the U.S. Bank, 2132 Brookpark

12    Road.

13         So the next thing that the government has to

14    prove is that you engaged in some kind of conduct that

15    indicated that you were using force or violence or

16    intimidation to overcome the will of the teller so the

17    teller would deliver to you the money of the bank.

18         Do you understand?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Any questions about that?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  Then the government has to prove

23    that the U.S. Bank had its deposits insured by the Federal

24    Deposit Insurance Corporation.  The government doesn't have

25    to prove that you knew that, but the government must prove

1     that, or otherwise, the court doesn't have jurisdiction to

2     consider the other elements of the crime.

3               Do you understand?

4               THE DEFENDANT:  Yes, Your Honor.

16:06:17  5          THE COURT:  And, of course, the government has

6     to prove that the monies that were recovered by the use

7     of violence or intimidation or force were the monies

8     belonging to and in the care, custody and control of the

9     bank.

16:06:35 10              Do you understand?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  The reason that's important, let's

13    say you walked into the bank and there's somebody in line at

14    the bank, and you say, "Sir, I am holding you up.  Give me

16:06:45 15    your money."  That would not be bank robbery.  That would be

16    robbery of the person in line, and probably this court would

17    not have jurisdiction over that robbery.

18              So the government has to prove that the monies

19    actually were in the custody of the bank and that those

16:06:59 20    monies were insured by the Federal Deposit Insurance

21    Corporation.

22              Do you see and understand?

23              THE DEFENDANT:  Yes, sir.

24              THE COURT:  Do you have any question about the

16:07:08 25    elements of the crime charged in Count 1?

1          THE DEFENDANT: No, sir.

2          THE COURT: Now, I believe Counts -- you're

3     not named in Count 2, but Counts 3, 4 and 5 are similar,

4     except the dates changed and the banks changed.

16:07:23  5          Mr. Tripi, correct me if I am wrong. I think

6     the elements are the same with those additional counts?

7          MR. TRIPI: The elements are the same. He is

8     charged -- the proof would be more that he's an aider and

9     abettor as to two of the four counts, and that he was the

16:07:34 10    principal robber of two of the counts.

11          THE COURT: All right. Well, from a

12     standpoint of liability for the offense or for his guilt,

13     whether he's a principal or aider and abettor, it doesn't

14     make any difference, as I understand it.

16:07:50 15          MR. TRIPI: Yes, sir. The statute provides

16     that he be treated the same way as the principal if he's an

17     aider and abettor.

18          THE COURT: Now, Mr. Holland, do you feel you

19     understand the nature of the crimes charged in Counts 1, 3,

16:08:02 20    4 and 5?

21          THE DEFENDANT: Yes, Your Honor.

22          THE COURT: And do you understand you have a

23     constitutional right to have the question of your guilt or

24     innocence determined by a jury?

16:08:10 25          THE DEFENDANT: Yes, Your Honor.

1          THE COURT:  Now, understanding that, in this

2     particular case, do you give up your constitutional right to

3     have this case determined by a jury?

4          THE DEFENDANT:  Yes, sir.

16:08:18   5          THE COURT:  The next constitutional right we

6     call the constitutional right of confrontation.

7          And what that means is were you to stand trial

8     and were the government to proceed with its testimony, the

9     government would have to call the persons upon whom it

16:08:35   10     depends for its case against you, such as the tellers at the

11     bank, and after the government concludes its examination of

12     that witness or witnesses, Mr. Serrat, as your lawyer, would

13     have the opportunity to cross-examine and challenge the

14     testimony of each witness that the government would present.

16:08:54   15          Do you understand that?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  That's what we mean by the

18     constitutional right of confrontation.

19          Now, if you plead guilty, you in effect give

16:09:01   20     up your constitutional right to confront the witnesses in

21     this case.

22          Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Is that what you wish to do in

16:09:08   25     this case?

1        THE DEFENDANT:  Yes.

2        THE COURT:  The next constitutional right that

3   is important has to do with the fact that were you to stand

4   trial, the one witness that the government could not call in

16:09:21  5   its case against you is you.  They're not allowed to call

6   you as a witness, because you have a constitutional right to

7   remain silent, and that means you cannot be called as a

8   witness by the government.

9        Do you understand?

16:09:33 10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  And when it came time for you to

12   put your case on, it would be for you to decide whether to

13   testify or not to testify.

14        Do you understand that?

16:09:44 15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Now, understanding -- now, if you

17   understand that, I want you to also understand, if you plead

18   guilty as you've indicated that you're planning to do, you

19   in effect testify against yourself by your plea of guilty.

16:09:58 20        Do you understand that?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Understanding that, do you wish to

23   still go forward with your decision to plead guilty?

24        THE DEFENDANT:  Yes, Your Honor.

16:10:03 25        THE COURT:  Now, another constitutional right

18

1    that you would have at the time of trial is to have

2    witnesses subpoenaed to come in and testify for you in your

3    defense.

4                    Do you understand that?

16:10:15  5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Now, I now want to shift gears and

7    talk about the sentencing consequences if you plead guilty.

8    And I believe -- and I would ask the counsel for the

9    government to correct me if I am wrong, but I believe that

16:10:28 10    the statutory penalty for Counts 1, 3, 4 and 5 is the same.

11                    MR. TRIPI:  That is correct.

12                    THE COURT:  And what is the maximum sentence

13    that could be imposed upon the defendant?

14                    MR. TRIPI:  Maximum sentence on the defendant

16:10:38 15    would be up to 20 years on each count of incarceration, up

16    to a $250,000 fine, or both, up to three years' supervised

17    release to follow any period of incarceration.

18                    The defendant is subject to a $100 special

19    assessment as to each count, and the government would be

16:11:00 20    seeking restitution for the amount taken from each of the

21    four banks.

22                    THE COURT:  Do you understand what they mean

23    by restitution, Mr. Holland?

24                    THE DEFENDANT:  Yes, sir.

16:11:06 25                    THE COURT:  Do you understand this concept of

1    supervised release?  Because that's basically new.  New in

2    the sense that when I first came on this court back in 1982,

3    if I sentenced somebody to prison, that's the last I saw of

4    them.  I didn't have to worry about that person coming back

16:11:29  5    before me if that person violated the conditions of

6    supervised release because it didn't exist at that time.

7              But when the Congress adopted sentencing

8    guidelines, they also decided to do away with the parole

9    board, and they said to us judges, "Guess what, you're now

16:11:45 10    the parole board."

11              So when a person is on supervised release

12    after the person has served the period of incarceration, if

13    that person violates one or more conditions of supervised

14    release, he or she is subject to being sent back to prison,

16:12:01 15    even though they served the original term, if the court

16    finds a violation.

17              Do you understand?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  Any questions about that?

16:12:08 20              THE DEFENDANT:  No.

21              THE COURT:  All right.  Now, having said all

22    that, now what becomes important is the application of the

23    sentencing table.

24              Mr. Serrat, do you have a copy?

16:12:21 25              MR. SERRAT:  I do, Judge.

1        THE COURT:  All right.  Now, the sentencing

2   has also changed over the years, Mr. Holland.  When the

3   sentencing guidelines first became effective in the late

4   '80s, they were called mandatory, which meant the judge had

16:12:38  5   to decide where the defendant fit on the sentencing table

6   which is in front of you.

7        And then the judge had to sentence within the

8   range that was determined.  And in order to determine what

9   the range is, the court has to make two calculations, what

16:12:56  10   is the offense level.  You see that phrase up there at the

11   top, "Offense Level"?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  It goes from 1 all the way down to

14   43.  And across the top, it says "Criminal History Category

16:13:07  15   (Criminal History Points)."

16        So the court has to decide what the criminal

17   history category is of the defendant.  Even if the defendant

18   has no criminal history record, he would still be a Criminal

19   History Category I, which seems kind of stupid, but a person

16:13:20  20   who has no record is still going to be Criminal History

21   Category I.

22        Do you see and understand?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  And then based on the number of

16:13:27  25   convictions, why then the criminal history category can go

1    from left to right across the table up to a higher criminal

2    history category.

3                    Do you see and understand that?

4                    THE DEFENDANT:  Yes, Your Honor.

16:13:38  5          THE COURT:  Now, after the court has decided

6    what the offense level is, the court has the power to engage

7    in what's called a departure.  Departure means the judge

8    says, "Well, I'm going to depart above the range that I've

9    determined and sentence the defendant to more months than

16:13:58 10  that range provides," and that's called an upward departure.

11                   Where the judge does that, the defendant may

12   appeal to the Court of Appeals and say, "Well, the judge got

13   it wrong.  There wasn't a basis for an upward departure even

14   if he calculated correctly the guidelines.

16:14:16 15          Do you understand?

16                   THE DEFENDANT:  Yes, Your Honor.

17                   THE COURT:  By the same token, if the court

18   says, "Well, I think the low number is too high, I'm going

19   to depart downward and give it a lower sentence," now the

16:14:27 20  government can appeal and challenge the downward departure

21   of the trial judge.

22                   Do you understand?

23                   THE DEFENDANT:  Yes, sir.

24                   THE COURT:  Now it gets even more complicated,

16:14:37 25  because recently the Supreme Court has decided this

1    sentencing table is advisory and not mandatory, but we still

2    have to go through the process and determine where the

3    defendant fits on the table; but now, the court has the

4    discretion to say, "Well, I'm going to vary up above the

16:14:56  5    high number or down below the low number."  So it's an

6    upward variance or a downward variance.  So a sentencing is

7    more complicated now than it used to be.

8              Now what I would like to do is have you tell

9    me where a person fits on the table if I give you the

16:15:11 10    offense level and the criminal history category.  So I want

11    you to look at the table.  I want you to assume that I have

12    to sentence somebody today who has an Offense Level 24 and a

13    Criminal History Category Roman numeral III.

14              Where does that person fit on the table?

16:15:25 15              THE DEFENDANT:  It's 63 to 78 months.

16              THE COURT:  Very well.  That's correct.  So

17    that's where I would be.

18              Now, I want to digress and ask counsel if you

19    have some view of what the offense level will be if the

16:15:42 20    defendant enters a plea of guilty as he proposes to do, and

21    I want you to understand what I'm told here now is not

22    final.  I have to make the final decision as to where you

23    fit on the table.

24              But I would like to know what counsel believes

16:15:55 25    as to where you would fit on the table, so I'm going to ask

1    counsel for the government to proceed first.

2              MR. TRIPI:  Your Honor, based on not only this

3    case, but the codefendant, and what was submitted to

4    probation on the other defendant, Mr. Persa, we have a

16:16:10  5    pretty good understanding of where we believe probation will

6    recommend the guidelines to be.

7              As to Count 1, the defendant's base offense

8    level under 2B3.1 of the United States Sentencing Guidelines

9    will be a level 20, and that because the property was taken

16:16:31  10   from a financial institution, you increase the 20 by two

11   levels.

12             As to Count 1, there's an additional two-level

13   increase that's proposed, and I understand that the

14   defendant -- for both defendants that counsel intend to

16:16:47  15   argue about the appropriateness of this one.  But that a

16   demand note was used that indicated that he had a gun, and

17   that if a threat of death is made, then the guidelines would

18   be increased by two more additional levels.

19             There are no other adjustments, so for Count

16:17:06  20   1, the final offense level would be 24.

21             So Count 3, the offense level only has the

22   additional two levels for the fact that it was the property

23   of a financial institution, and probation is likely to

24   determine that that is a level 22.

16:17:26  25             For Count 4, again, there's the additional two

1    levels not only for the financial institution, but for the

2    threat of death that was implicitly made by the use of the

3    note that stated, "I have a gun.  Stay calm and nobody gets

4    hurt," for a final offense level of 24.

16:17:51  5          In Count 5, again, there's only one

6    adjustment.  That's the two levels for financial

7    institution.  So Count 4 -- I'm sorry, Count 5 would be an

8    offense level of 22.

9          As the court's aware, pursuant to the

16:18:08 10    multiple-count adjustment guidelines, Section 3D1.4, these

11    four offenses are not grouped, and they're each treated as a

12    separate offense or separate group.

13          Because they're within two levels of each

14    other, each group was graded to have an additional -- count

16:18:32 15    as one unit, and the guidelines tell us that when there are

16    a total of four units, that the offense -- the greatest

17    adjusted offense level, which in this case would be 24,

18    would be increased by four levels, so that the combined

19    adjusted offense level is 28.

16:18:52 20          Your Honor, because of the defendant's plea

21    and provided the defendant continues to express acceptance

22    of responsibility to probation and throughout to the

23    sentencing, the defendant would be entitled to two levels

24    for acceptance of responsibility.

16:19:10 25          Pursuant to our earlier representations to

1    defense counsel, that the United States would consider this

2    to be a timely plea made and that the -- we intend to ask

3    for an additional reduction of one level, which we're

4    allowed to do, for a total of three levels off from 28, that

16:19:33  5    would be an adjusted offense level of 25.

6                    Does the court care for me to go into the

7    possibility of criminal history category?

8                    THE COURT:  Well, I don't know if you have

9    some estimate of what you think the criminal history

16:19:48  10    category might be.

11                    MR. TRIPI:  Your Honor, this is a difficult

12    case because of the number of convictions, and I believe his

13    previous counsel had asked for a pre-plea/presentence report

14    to have probation give us a better sense.

16:20:02  15                    THE COURT:  Was that done here?

16                    MR. TRIPI:  That was not done here.  So we --

17    from the government's perspective, it appears that the

18    defendant may be in Criminal History Category IV, which

19    would be a sentencing range of 84 to 105 months at a level

16:20:20  20    25.

21                    Your Honor, there was an outside chance that

22    the defendant would be a career offender.  Mr. Serrat and

23    Mr. Serrano and I have discussed this issue before, and we

24    believe because of the offenses, priors was a breaking and

16:20:39  25    entering, that it's probably not going to qualify.  We would

1    have to have some very unusual facts --

2                  THE COURT:  To elevate it to a career

3    offender?

4                  MR. TRIPI:  Excuse me, sir?

16:20:45   5                  THE COURT:  You would have to have something

6    more to elevate it to career offender?

7                  MR. TRIPI:  Right.  We don't believe that it

8    would be elevated to a career offender.  There's an outside

9    possibility that that would happen.  If he's not a career

16:21:00  10    offender, these would be the guidelines.  These are the

11    guidelines we anticipate would likely be presented in the

12    presentence report.

13                  THE COURT:  All right.  Mr. Serrat, do you

14    have anything you want to add?

16:21:12  15                  MR. SERRAT:  No, Judge, other than I think

16    it's already -- the court had ruled.  We will agree to it as

17    well, the enhancements, it's something that ultimately the

18    court will make a decision at sentencing.  Other than that,

19    that is our understanding of the guidelines as well, Your

16:21:23  20    Honor.

21                  THE COURT:  I want to indicate to Mr. Holland,

22    no matter where the range is finally fixed, I still have an

23    additional duty to decide whether I should vary either

24    upward or downward.  It's not very often I do either, but I

16:21:52  25    want you to understand that I have the additional power.

1          Do you understand?

2                 THE DEFENDANT:  Yes, Your Honor.

3                 THE COURT:  So the presentence report -- if

4     you plead guilty, the presentence report becomes pretty

16:22:02  5     important, because I want to know as much about every

6     defendant I sentence I can learn, and I get that basically

7     out of the presentence report.

8                 So it sounds to me like at least it may well

9     turn out that the sentencing range is 84 to 105 months.

16:22:25 10                 Is that your understanding?

11                 THE DEFENDANT:  Yes, Your Honor.

12                 THE COURT:  Do you understand you have the

13     right to argue that it should be modified in some fashion?

14     And I'm the one that makes that decision, but only after I

16:22:35 15     see the presentence report and hear argument of counsel.

16                 Do you understand that?

17                 THE DEFENDANT:  Yes, sir.

18                 THE COURT:  Do you have any questions about

19     the sentencing consequences if you do decide to plead

16:22:45 20     guilty?

21                 THE DEFENDANT:  No, sir.

22                 THE COURT:  If you do plead guilty, will that

23     plea of guilty be voluntary on your part?

24                 THE DEFENDANT:  Yes, Your Honor.

16:22:52 25                 THE COURT:  Will it be an exercise of your own

1  free will?

2  THE DEFENDANT:  Yes, Your Honor.

3  THE COURT:  Has anybody forced or threatened

4  you to plead guilty?

16:22:59 5  THE DEFENDANT:  No, sir.

6  THE COURT:  Now, I also have what's called an

7  addendum to the change of plea that bears your signature,

8  and what it means is that you have reserved to yourself the

9  right to challenge on appeal my earlier rulings on the

16:23:22 10  motion to suppress.

11  Do you understand that?

12  THE DEFENDANT:  Yes, Your Honor.

13  THE COURT:  And if -- and so the Court of

14  Appeals, if it's -- if there is a challenge to my earlier

16:23:37 15  ruling, the court is going to make that decision without

16  regard to the fact that you entered a plea of guilty.  They

17  have to decide as a matter of law when I'm right or wrong.

18  Do you understand that?

19  THE DEFENDANT:  Yes, Your Honor.

16:23:48 20  THE COURT:  So the fact that you're entering

21  into a conditional plea of guilty means that if the Sixth

22  Circuit should decide I was wrong, they send the case back

23  and you're allowed to withdraw your plea.

24  Do you understand that?

16:24:07 25  THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Do you have any questions about

2    that?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  I think you understand that an

16:24:25  5    order of restitution would follow a plea of guilty if I find

6    that the amount that's alleged to have been taken in the

7    robbery is what the proof is, and that would mean that if

8    you're sent to prison, while you're in prison, that I could

9    require you to spend -- use some of the money you get from

16:24:45 10    working in the prison toward restitution, but when you came

11    out and were on supervised release, you would have a

12    continuing duty to make restitution until it was paid.

13          Do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

16:24:57 15          THE COURT:  Any questions about the

16    restitution?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  I would ask counsel for the

19    government, is there anything further you think I need to

16:25:09 20    review with the defendant before I ask him for his plea?

21          MR. TRIPI:  Your Honor, other than the factual

22    basis.

23          THE COURT:  That's right.  I completely forgot

24    about the factual basis.

16:25:23 25          Let me explain the factual basis.  Before I

1   can accept a plea of guilty, I have to be informed what are

2   the facts that support the plea of guilty.

3                   And so I can't find the defendant guilty

4   simply upon his plea, but I have to find separately from the

16:25:42  5   plea that there is a factual basis to support the plea of

6   guilty.

7                   So I am going to ask counsel for the

8   government to tell me what the factual basis is for Counts

9   1, 3, 4 and 5.  And thank you for correcting me on that.

16:25:56  10  Not correcting me, but reminding me that I missed that very

11  important part.

12                  MR. TRIPI:  Your Honor, specifically more

13  detailed as to Count 1, as to all of the -- strike that.

14                  I have some general comments as to the overall

16:26:11  15  offense conduct, and then as to each specific count, I will

16  provide the court additional factual basis.

17                  If this matter were to proceed to trial, we

18  would have witnesses and exhibits which would establish the

19  following beyond a reasonable doubt:  That an investigation

16:26:25  20  by the FBI commenced on November --

21                  THE COURT:  Why don't you indicate which --

22  are you talking about all the counts?

23                  MR. TRIPI:  All the counts.

24                  THE COURT:  Because I want the defendant to

16:26:32  25  have the indictment in front of him so he can know which

1    counts you're talking about.

2                    MR. SERRAT:  We do, Judge.  We have one.

3                    THE COURT:  Okay.

4                    MR. TRIPI:  That an investigation by the FBI

16:26:41  5    had commenced on November 13, 2010 and revealed that two

6    individuals were responsibile for committing several bank

7    robberies.  Descriptions by the witnesses established that

8    they were the same individuals, based on the description

9    given by witnesses and video surveillance.  Specifically,

16:26:59  10    both wore hat and scarf, but both had prominent noses in the

11    surveillance photographs.  However, one was much taller than

12    the other.

13                    On January 13, 2011, Matthew Holland and

14    Richard Persa, who we believe to be Holland's cousin and

16:27:17  15    roommate, were arrested by the Cleveland Police Department.

16    On the following day, both Holland and Richard Michael Persa

17    were interviewed by the FBI in separate interviews and -- by

18    the FBI and two deputized federal agents of the Cleveland

19    Cuyahoga County Violent Crimes Task Force.

16:27:40  20                    Both admitted to the bank robberies charged in

21    the indictment and gave details on how the robberies were

22    committed.  The modus operandi was essentially the same.

23    One individual would walk into the bank while the second

24    stayed outside in the vehicle acting as a lookout and

16:27:57  25    getaway car.

1       The individual going inside the bank would

2   hand the teller a note stating that he had a gun and that it

3   was a robbery, demanding money without a dye pack and listed

4   the denominations that they wanted, that is, 100s, 50s, 20s

5   and 10s.  They used the same vehicle, which was a van that

6   had been stolen from the Fleet Avenue/Broadway Avenue area

7   of Cleveland.

8       Specifically as to Count 1, we would be able

9   to demonstrate on November 13, 2010, in the Northern

10  District of Ohio, both individuals took United States

11  currency from the person and presence of tellers and other

12  employees of the U.S. Bank located at 2132 Brookpark Road,

13  Cleveland, Ohio.

14      The investigation revealed that Persa walked

15  into the bank while Matthew Holland waited outside acting as

16  a lookout and a getaway driver.  Persa was wearing a hat and

17  scarf covering his face, handed a note to the teller

18  demanding money.  Persa was given approximately $3,703 of

19  monies belonging to the bank, the deposits of which were

20  then insured by the Federal Deposit Insurance Corporation,

21  or the FDIC.

22      And as to -- you know, for purposes of

23  understanding why he's not charged in Count 2, evidence

24  indicated that Richard Michael Persa committed a separate

25  bank robbery which was the subject of Count 2 in which he's

1    pled guilty to.

2              As to Count 3, evidence would show that on

3    December 15, 2010, in the Northern District of Ohio, Matthew

4    J. Holland walked into the Key Bank located at 6300

16:29:41  5    Brookpark Road in Cleveland, Ohio.  Persa acted as a lookout

6    man and getaway driver.  Approximately $1,760 was stolen by

7    Holland during the robbery.  Key Bank was insured by the

8    FDIC at that time.  A note was used in that -- in that

9    robbery.

16:30:02 10              As to Count 4, on December 22, 2010, in the

11    Northern District of Ohio, Eastern Division, Richard Michael

12    Persa walked into the Fifth Third Bank located at 7414

13    Broadway Road, Parma, Ohio, while Matthew J. Holland stayed

14    outside acting as a lookout man and getaway driver.  Persa

16:30:23 15    obtained approximately $5,145 in monies belonging to the

16    bank, the deposits of which were then insured by the FDIC.

17              As to Count 5, on December 30, 2010, in the

18    Northern District of Ohio, Richard Michael Persa and Matthew

19    J. Holland both walked into the Key Bank located at 3370

16:30:46 20    West 117th Street, Cleveland, Ohio.  Persa left the bank,

21    but Matthew Holland was successful in taking from a teller

22    approximately $5,070 in monies that were under the care and

23    possession of said bank, the deposits of which were then

24    insured by the FDIC.

16:31:09 25              Notes were used in both Count 4 and Count 5,

1    as well.

2                   Your Honor, the photographic evidence of the

3    surveillance photograph from each of the banks would

4    consistently show the faces of either -- or portions of the

16:31:27  5    faces of either Mr. Persa or Mr. Holland; in other words,

6    the photographic evidence is consistent, although personal

7    identification of each individual was not made by the

8    individual tellers in these cases because they were, again,

9    covering portions of the face with a scarf and with a hat.

16:31:45  10                   Your Honor, the evidence would also indicate

11    that obviously we would not go forward with the contention

12    of Mr. Persa as part of our proof, but Mr. Holland gave

13    detailed information to the FBI that included identification

14    of himself and Persa -- excuse me, identification of himself

16:32:07  15    in surveillance photographs and indicating which notes he

16    had personally prepared and which notes were prepared by

17    Persa, or prepared by the other bank robber.

18                   THE COURT:  Thank you.  The court finds there

19    is a factual basis to Counts 1, 3, 4 and 5.  Is there

16:32:28  20    anything else I need to review from the government's

21    standpoint?

22                   MR. TRIPI:  I don't believe there's anything

23    else other than --

24                   THE COURT:  Mr. Serrat, is there anything?

16:32:40  25                   MR. SERRAT:  No, Judge, I don't.

1          THE COURT:  Now, before I proceed any further,

2     Mr. Holland, do you have any questions that you would like

3     to direct to me before you proceed?

4          THE DEFENDANT:  No, Your Honor.

16:32:56  5          THE COURT:  Is there anything you would like

6     to discuss in private with your lawyer before we proceed?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Are you ready for me to ask you

9     for your pleas to Counts 1, 3, 4 and 5?

16:33:09 10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you want me to read the text,

12     or do you want to waive the reading of the text of those

13     counts, 1, 3, 4 and 5?

14          THE DEFENDANT:  Waive.

16:33:16 15          THE COURT:  Very well.  Mr. Holland, how do

16     you plead to Count 1 in the indictment in Case Number

17     1:11cr70, which charges you with bank robbery on or about

18     November 13, 2010?

19          THE DEFENDANT:  Guilty.

16:33:30 20          THE COURT:  Mr. Holland, how do you plead to

21     Count 3, which charges you with bank robbery on or about

22     December 15, 2010?

23          THE DEFENDANT:  Guilty.

24          THE COURT:  And, Mr. Holland, how do you plead

16:33:42 25     to Count 4, which charges you with bank robbery on or about

1    December 22, 2010?

2                   THE DEFENDANT:  Guilty.

3                   THE COURT:  Mr. Holland, how do you plead to

4    Count 5, which charges you with bank robbery on or about

16:33:54  5    December 30, 2010?

6                   THE DEFENDANT:  Guilty.

7                   THE COURT:  The court finds that there's a

8    factual basis to support the four pleas of guilty.  The

9    court finds the defendant understands the constitutional

16:34:07 10    rights to which he's entitled and which are relevant in this

11    matter.  The court finds that the defendant understands the

12    sentencing consequences, and the court finds there's a

13    factual basis to support the pleas of guilty to each of the

14    four counts.  So, therefore, the court finds the defendant

16:34:21 15    guilty as charged in Counts 1, 3, 4 and 5.

16                   I would like to confer with counsel now for a

17    date for sentencing.

18           (Thereupon, a sidebar discussion was had.)

19                   THE COURT:  Mr. Holland, I'm going to schedule

16:35:58 20    your sentencing for the noon hour on October 6, 2011.

21                   The next step will be for me to order a

22    presentence report.  The probation department will prepare

23    that report.  It's very important.  That report accompanies

24    you to prison.  You want to make sure it's accurate.

16:36:24 25                   The first thing that will happen is you will

1    be interviewed and your lawyer will make sure he's available

2    for the interview by probation.  Then they will prepare the

3    report.  And in advance of October 6, the proposed report

4    will come out to counsel.  They will have an opportunity to

16:36:42  5    review it, and if they think there's something missing or

6    wrong, they can bring that to the attention of the probation

7    department.

8              I am asking you to look at it very carefully,

9    because if you think there's something missing or wrong,

16:36:55  10    make sure that Mr. Serrat knows about that, because the

11    report is not only going to consider the offense conduct,

12    they're also going to ask you if you have anything to say

13    that constitutes an acceptance of responsibility.  And I am

14    sure Mr. Serrat will counsel you on that.

16:37:13  15              But one thing I want to caution you against,

16    if you -- and this happens from time to time.  Defendants

17    will plead guilty and they will go to the probation

18    department and say, "Well, I pled guilty but I wasn't really

19    guilty," and et cetera, et cetera.  Well, you just forfeited

16:37:29  20    acceptance of responsibility.  So you want to be sure you

21    don't do that, because it harms the eventual sentence,

22    because you need that acceptance of responsibility to adjust

23    the guidelines downward, and I believe you understand that.

24              THE DEFENDANT:  Yes, Your Honor.

16:37:45  25              THE COURT:  And then it's going to -- the

1    presentence report is going to consider your criminal

2    history, and if you think that's wrong, make sure Mr. Serrat

3    knows about it.

4                 They're also going to consider your education,

16:37:59 5    and you told me you went to college, so they will want to

6    know about that.  They will consider -- and they'll want to

7    know about your employment history, your health.  If there

8    had been problems with your health, they're going to want to

9    know about that.  They're going to ask questions about your

16:38:12 10    family.

11                 So it's a rather complete document, and that

12    will go with you to the Bureau of Prisons, so you want to be

13    sure it's a very accurate document.

14                 Any questions about that?

16:38:21 15                 THE DEFENDANT:  No, sir.

16                 THE COURT:  Is there anything further to come

17    before the court today?

18                 MR. TRIPI:  No, Your Honor.

19                 MR. SERRAT:  No, Judge.

16:38:27 20                 THE COURT:  Thank you.  Court will be in

21    recess.

22

23

24

25

1                          C E R T I F I C A T E

2

3               I certify that the foregoing is a correct

4       transcript from the record of proceedings in the

5       above-entitled matter.

6

7

8                    s/Lori A. Callahan
                     Lori Ann Callahan, RMR-CRR
9                    U.S. District Court, Suite 568
                     2 South Main Street
10                   Akron, Ohio  44308
                     (330) 252-6022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25